# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

WEBSTER CHRYSLER JEEP, INC. and
RANDY HENDERSON, as its President,

               Plaintiff(s),                    DECISION & ORDER
        v.                           08-CV-6535

CHRYSLER HOLDING LLC, CHRYSLER LLC,
DAIMLERCHRYSLER FINANCIAL SERVICES
AMERICAS LLC, CHRYSLER MOTORS LLC,
and CHRYSLER REALTY COMPANY LLC,

               Defendant(s).

_____

CHRYSLER FINANCIAL SERVICES
AMERICAS LLC,

               Plaintiff(s),                    DECISION & ORDER
        v.                           09-CV-6044

R.H. WEBSTER REALTY, L.L.C. and
RANDOLPH B. HENDERSON, a/k/a
Randy Henderson,

               Defendant(s).

_____

## Preliminary Statement

Before the Court are the validity of jury trial demands in two separate, but related cases.[1]  In Civil Case No. 08-CV-6535, Webster Chrysler Jeep, Inc. ("Webster") and Randy Henderson, as its President, commenced an action under the Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221-1226, the New York Franchised Motor Vehicle Act, the New York Vehicle and Traffic Law §§ 463-473, the Equal Credit Opportunity Act, 15 U.S.C. § 1691, and state common

---

[1]By Order entered February 10, 2010, the captioned actions were consolidated.

law seeking injunctive relief and damages for alleged attempted wrongful termination of a motor vehicle franchise.  See Amended Complaint (Docket # 82).   In both the original and amended Complaints (Dockets ## 1, 82), Webster demands a jury trial.   In Civil Case Number 09-CV-6044, Chrysler Financial Services Americas LLC has sued R.H. Webster Realty and Randy Henderson alleging that Webster Chrysler Jeep is in default of its obligations under various dealership financing agreements and that they are liable for the defaults based on their signing guarantees of the obligations of Webster Chrysler Jeep, Inc.  See Amended Complaint (Docket # 21).   In its amended answer (Docket # 24), Webster asserts three counterclaims which allege, inter alia, that Chrysler Financial engaged in racially discriminatory and retaliatory conduct by unfairly accelerating Webster Chrysler Jeep's financial obligations.  More specifically, Webster alleged that the actions of Chrysler Financial violated the Equal Credit Opportunity Act (First Counterclaim), 42 U.S.C. § 1981 of the Federal Civil Rights Act (Second Counterclaim) and New York's implied covenant of good faith inherent in all contractual agreements (Third Counterclaim). As to each of their counterclaims, R.H. Webster Realty and Randy Henderson demand a jury trial.

Currently pending before the Court is Chrysler Financial's motion to strike the demands for a jury trial pursuant to Federal Rule of Civil Procedure ("FRCP") 39(a)(2). (Docket # 107).  On July

2

6, 2011, the Court held a hearing and arguments were heard from the parties.  Post hearing submissions were thereafter received by the Court.  After consideration of the papers and exhibits filed in connection with the pending motion and the arguments of counsel, and for the reasons that follow, the Court hereby grants Chrysler Financial's motion to strike the demands for a jury trial (Docket # 107).

### Relevant Facts

Chrysler Financial moves pursuant to FRCP Rule 39(a)(2) to strike Webster's demands for a jury trial on grounds that Webster and Henderson "contractually, knowingly and voluntarily waived their right to a trial by jury."  See Chrysler Financial's Memorandum of Law (hereinafter "Chrysler Memo") (Docket # 108) at p. 1.  Chrysler argues that Webster waived its right to a jury trial, as "numerous, conspicuous" jury waivers were contained in the various documents executed by Webster on March 27, 2002 and December 30, 2004.  Specifically, on March 27, 2002, Webster entered into a Master Loan and Security Agreement ("MLSA") with DaimlerChrysler and, pursuant to the MLSA's terms, Webster waived its right to a jury trial in any lawsuit commenced with regard to the financing relationship between Webster and Chrysler Financial. See Exhibit "1" attached to Docket # 107.  On page 12 of the MLSA there is a separate paragraph with a title in bold, capital letters

3

that reads: "**JURY WAIVER.**"   <u>Id.</u> at p. 12.   The "**JURY WAIVER**"
paragraph states: "Lender, Borrower and each Guarantor waive the
right to trial by jury in any lawsuit brought by any party against
any other party."   <u>Id.</u>   The very next page of the MLSA is the
signature page, and the first paragraph of that page is in all
capital letters and provides:

> EACH BORROWER AND EACH GUARANTOR CERTIFY THAT: (1) THEY
> HAVE AGREED TO BE SUBJECT TO THIS AGREEMENT AND EACH
> RELATED DOCUMENT AS THEIR OWN FREE ACT AND DEED, WITHOUT
> DURESS OR COERCION; (2) THEY HAVE CONSULTED WITH AN
> ATTORNEY, OR HAD THE OPPORTUNITY TO DO SO; (3) THEY HAVE
> CAREFULLY READ THIS AGREEMENT AND EACH RELATED DOCUMENT,
> AND AGREE TO ALL THEIR TERMS AS WRITTEN; (4) THEY HAVE
> KNOWINGLY CONSENTED TO ALL WAIVERS; AND (5) NEITHER
> LENDER NOR ANYONE CONNECTED WITH LENDER HAS MADE ANY
> STATEMENT OR PROMISE THAT MAY CONTRADICT IN ANY WAY WHAT
> IS WRITTEN IN THIS AGREEMENT OR IN ANY RELATED DOCUMENT.

<u>Id.</u> at p. 13.   Randolph Henderson's name and signature appears on
page 13 underneath the above-referenced paragraph of said MLSA
agreement.   <u>Id.</u>

On the same day that Webster and DaimlerChrysler entered into
the MLSA (*i.e.*, March 27, 2002), in conjunction with the extension
of retail financing programs for Webster's customers, Webster
entered into a Retail Installment Contract and Lease Program
Agreement ("RICLPA").   <u>See</u> Exhibit "2" annexed to Docket # 107.
The RICLPA also contains a jury waiver and a certification by the
Dealer (Webster) that the Dealer has carefully read the agreement
and agrees to all of its terms and conditions, similar to the
above-referenced certification paragraph in the MLSA.   <u>See</u> <u>id.</u>   The

4

RICLPA jury waiver is in a separate paragraph with a separate heading stating: "Jury Waiver." Id. at p. 6.  The certification paragraph is at the top of the signature page, in all capital letters, and has Henderson's name and signature written beneath it. Id. at p. 8.  Also on March 27, 2002, in conjunction with the establishment of credit facilities with Webster, the dealerships entered into a Certificate of Authority.  See Exhibits "3A" and "3B" annexed to Docket # 107.  The Certificate of Authority provided representations from various Webster employees that they "are authorized to represent and act on behalf of the Company [Webster]."[2]  Id.  Henderson, acting as General Manager, modified the Certificate of Authority so that he was the sole individual with authority to borrow money, execute loan documents, grant a lender a security interest or guaranty obligations of others. Compare Exhibit "3A" with Exhibit "3B" annexed to Docket # 107.[3]

On April 23, 2002, Henderson executed a Continuing Guaranty in

---

[2] Specifically, the following Webster employees signed the Certificate of Authority: (1) Henderson, as General Manager, (2) Mark Ledtke, as Assistant General Manager, (3) Susan Silvernail, as Secretary/Treasurer, and (4) Bonita Jones, as Assistant Office Manager.  See Exhibit "3A" annexed to Docket # 107.

[3] In the first Certificate of Authority (Exhibit "3A"), in which Henderson and the three other Webster representatives (a.k.a. Ledtke, Silvernail and Jones) are listed, the authority to borrow money, execute loan documents, grant a lender a security interest or guaranty obligations of others are all stricken from the document.  See Exhibit "3A."  In the second Certificate of Authority, in which only Henderson is listed, none of said authorizations are stricken, evidencing Henderson's desire to maintain sole authority in these areas.  See Exhibit "3B."

favor of Chrysler Financial.  <u>See</u> Exhibit "4" annexed to Docket # 107.  The Continuing Guaranty also contains a jury waiver, which is in a separate paragraph with a title in boldface, capital letters reading **"JURY WAIVER."**   <u>See</u> <u>id.</u> at p.3.   The **"JURY WAIVER"** paragraph appears on the same page as the signature page, which contains the name and signature of Henderson just below a certification in all capital letters which indicates, *inter alia*, that he has (1) "CONSULTED WITH AN ATTORNEY OR HAD THE OPPORTUNITY TO DO SO," (2) "THOROUGHLY READ THIS GUARANTY, THE AGREEMENT, ALL RELATED DOCUMENTS AND ANY OTHER INSTRUMENT OR DOCUMENT EXECUTED IN CONNECTION WITH ANY OBLIGATION, AND COMPLETELY UNDERSTAND AND AGREE TO THEIR PROVISIONS AS WRITTEN," and (3) **"KNOWINGLY AGREED TO ALL WAIVERS."**  <u>Id.</u> (emphasis added).

In October 2004, Henderson applied to DaimlerChrysler for a real estate loan.  On DaimlerChrysler's "Real Estate Terms and Conditions" document, Henderson represented on behalf of the limited liability company to be formed that their legal counsel is Harris Beach LLC.  <u>See</u> Exhibit "5" annexed to Docket # 107.  Subsequently, on December 30, 2004, the real estate loan transaction represented in the real estate terms and conditions set forth in the DaimlerChrysler Real Estate Terms and Conditions document was consummated, and Henderson, as Managing Member of R.H. Webster Realty, L.L.C., executed a Fixed Rate Promissory Note with interest rate adjustments, as well as a Permanent Mortgage which

was subsequently recorded in the Office of the Monroe County Clerk on December 30, 2004.  See Exhibits "6" and "7" annexed to Docket # 107.  With the execution of the fixed rate Permanent Mortgage, Henderson executed a Borrower Real Estate Loan and Security Agreement on December 30, 2004.  See Exhibit "8" annexed to Docket # 107.  This Agreement contains a jury waiver which is set apart in its own Section and paragraph.  See id. at p. 14.  Specifically, the jury waiver reads as follows:

> **SECTION 12.0 <u>WAIVER OF JURY TRIAL.</u>**  LENDER AND BORROWER ACKNOWLEDGE AND AGREE THAT THERE MAY BE A CONSTITUTIONAL RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY CLAIM, DISPUTE OR LAWSUIT ARISING BETWEEN THEM, BUT THAT SUCH RIGHT MAY BE WAIVED.  ACCORDINGLY, THE PARTIES AGREE:
>
> (A)   NOTWITHSTANDING SUCH CONSTITUTIONAL RIGHT, IN THIS COMMERCIAL MATTER THE PARTIES BELIEVE AND AGREE THAT IT SHALL BE IN THEIR BEST INTEREST TO WAIVE SUCH RIGHT AND, ACCORDINGLY, HEREBY WAIVE SUCH RIGHT TO A JURY TRIAL AND FURTHER AGREE THAT THE BEST FORUM FOR HEARING ANY CLAIM, DISPUTE OR LAWSUIT, IF ANY, ARISING IN CONNECTION WITH THIS AGREEMENT OR RELATIONSHIP BETWEEN LENDER AND BORROWER, INCLUDING, BUT NOT LIMITED TO, IN CONNECTION WITH THE COLLECTION OF THE LOAN OR OTHER OBLIGATIONS, SHALL BE A COURT OF COMPETENT JURISDICTION SITTING WITHOUT A JURY;
>
> (B)   THIS WAIVER OF JURY TRIAL IS FREELY, KNOWINGLY AND VOLUNTARILY GIVEN BY EACH PARTY, WITHOUT ANY DURESS OR COERCION, AFTER EACH PARTY HAS CONSULTED WITH ITS COUNSEL AND HAS CAREFULLY AND COMPLETELY READ ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT, SPECIFICALLY INCLUDING THIS WAIVER OF JURY TRIAL PROVISION; AND
>
> (C)   NEITHER LENDER NOR BORROWER SHALL BE DEEMED TO HAVE RELINQUISHED THIS PROVISION WAIVING JURY TRIAL EXCEPT BY A WRITING SIGNED BY AN OFFICER OF LENDER AND BORROWER RELINQISHING THIS WAIVER OF JURY TRIAL PROVISION.

See id. at pp. 14-15.  The sentence immediately below this jury waiver paragraph states: "IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement on the date first above written," and is signed by Henderson.  Id. at p. 15.

On December 30, 2004, Henderson, acting in his capacity as President of Webster Chrysler Jeep, Inc. and as Managing Member of R.H. Webster Realty, L.L.C., executed an "All Encompassing Guaranty," which served to confirm that both companies were guarantying their respective obligations to the Chrysler entities. See Exhibit "9" annexed to Docket # 107.  Paragraph No. 12 of this document is in all capital letters and states, *inter alia*, that this Guaranty "IS FREELY AND VOLUNTARILY GIVEN" after consulting with counsel or having "BEEN GIVEN AN OPPORTUNITY TO DO SO."  Id. at ¶ 12.

Also on December 30, 2004, in conjunction with the Fixed Rate Promissory Note and Permanent Mortgage, Henderson, acting as President of Webster Chrysler Jeep, Inc., executed a "Guarantor Security Agreement" in conjunction with its guarantor of the obligations of Webster Realty.  See Exhibit "10" annexed to Docket # 107.  Once again, the document contained a jury waiver provision which was in a separate Section/paragraph in all capital letters. See id. at pp. 13-14.  The title of the jury waiver read as follows: "**SECTION 11.0 WAIVER OF JURY TRIAL**."  Id. at p. 13. Immediately following the jury waiver paragraph is Henderson's

8

signature.  *Id.* at p. 14.  Also in conjunction with the Fixed Rate Promissory Note and Permanent Mortgage, Henderson executed a Continuing Guaranty on December 30, 2004.  *See* Exhibit "11" annexed to Docket # 107.  This document contains a certification written in all capital letters stating, *inter alia*, that "THIS GUARANTY IS FREELY AND VOLUNTARILY GIVEN" after consultation with counsel or having "BEEN GIVEN AN OPPORTUNITY TO DO SO" and "ALL OF THE TERMS AND PROVISIONS OF THIS GUARANTY" have been "CAREFULLY AND COMPLETELY READ."  *Id.* at ¶ 12.  Henderson's signature is immediately under this certification.  *Id.* at p. 4.

In a letter dated December 30, 2004, DaimlerChrysler's attorney, Sienna D. Dietz, Esq. of Dickinson Wright PLLC, wrote to R.H. Webster Realty, L.L.C.'s attorney, Leon T. Sawyko, Esq. of Harris Beach, LLP, to "confirm the mutual understanding reached by our respective clients concerning the" loan from DaimlerChrysler to R.H. Webster Realty.  *See* Exhibit "12" annexed to Docket # 107. Attorney Dietz listed the amendments to the Real Estate Terms and Conditions letter signed by Henderson in October 2004 that the parties agreed to.  *Id.*  Attorney Dietz's December 30, 2004 letter was "Acknowledged and Agreed" to by Henderson in his capacity as Managing Member of R.H. Webster Realty, L.L.C.  *Id.*

Based on the foregoing, Chrysler Financial requests that the Court issue an Order striking Webster's demands for a jury trial on grounds that Webster and Henderson "have knowingly waived their

right to a jury trial." (Docket # 107). Chrysler Financial argues that Webster's waiver of jury trial was "not procured by fraud." See Docket # 107 at p. 13. Chrysler Financial points out that Henderson "was a sophisticated businessman with extensive experience in matters related to the operation of automotive dealerships and automotive finance" and had "eleven (11) years of experience in the automotive industry prior to the earliest date of a business relationship with Chrysler Financial." Id. at ¶¶ 42, 45. Chrysler Financial asserts that "[n]either Webster CJ, Webster Realty or Randolph Henderson individually, allege anywhere in any pleading, that the execution of any of the documents containing a waiver of jury trial was procured by fraud by the lender." Id. at ¶ 54. Chrysler Financial argues that Henderson "is a sophisticated business man and had ample opportunity to consult with counsel prior to the execution of the documents containing the waiver of jury." Id. at ¶ 56.

In opposition, Webster asserts that "the Court must separate the two actions to avoid expanding the jury waiver clauses beyond their intended scope" because Webster's "claims against Chrysler Financial do not arise from the same nucleus of facts as the contract documents that [Chrysler Financial] utilize[s] to support [its] claims." See Webster's Memorandum in Opposition (hereinafter "Webster Memo") (Docket # 111) at p. 1, 3. Webster contends that Chrysler Financial is now trying "to use these same documents from

10

its action concerning the breach of contract proceedings to prevent [Webster] from the opportunity for a jury trial." Id. at p. 3.

Webster also asserts that it did not waive its right to a jury trial "knowingly and intentionally." Webster argues that the existing dealer network financial framework for car dealers "had been in place for decades" and "forced Mr. Henderson to sign a non-negotiable contract with a captive financing company." Id. at p. 4. Webster contends that it "depended on the financing received from Chrysler's captive finance arm, Chrysler Financial, to have the capital necessary to run the dealership" and maintains that Henderson "did not have any choice but to accept the contract as written." Id. at p. 5. According to Henderson, he needed financing from Chrysler Financial in 2002 and 2004 to keep his business operating, and "had no choice but to sign the pre-printed form contract supplied by Chrysler Financial." See Affidavit of Randy Henderson (hereinafter "Henderson Aff.") (Docket # 112) at ¶ 6. Henderson avers that he "did not have the opportunity to negotiate the terms of the financing contracts, especially the jury waiver clause." Id. at ¶ 7. Henderson contends that he signed the contracts because he needed the financing to continue to operate his business and "did not have the opportunity to negotiate any jury waiver clause." Id. at ¶¶ 8-9. Webster asserts that Chrysler Financial "dictated the terms without actual negotiations" and, as a result, "Henderson did not knowingly and voluntarily surrender

11

his constitutional right to a jury trial." See Webster Memo at p. 5.

## **Discussion**

Pursuant to FRCP Rule 39, "[w]hen a jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action" and "[t]he trial on all issues so demanded must be by jury unless the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). The Seventh Amendment right to a jury is "fundamental" and "its protection can only be relinquished knowingly and intentionally." National Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977). Indeed, a presumption exists against jury waiver. Id.

Parties to a contract, however, may knowingly and intentionally waive this right. See Bank of China, N.Y. Branch v. NBM L.L.C., No. 01 CIV.0815 (DC), 2002 WL 1072235, at *1 (S.D.N.Y. May 28, 2002)(citing Herman Miller, Inc. v. Thom Rock Realty Co., L.P., 46 F.3d 183, 189 (2d Cir. 1995)). "Contract provisions waiving the right are narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly applied." Morgan Guar. Trust Co. of N.Y. v. Crane, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999). "[J]ury trial waivers are common in loan agreements and loan guarantees" and "are regularly enforced." Id. In deciding whether a jury trial waiver in a contract was knowingly

12

and voluntarily entered into, courts must consider the following factors: "1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." Id. at 603-04.

Scope of Waiver: Webster maintains that the contractual waivers Chrysler Financial relies on do not govern because Webster's claims for alleged wrongful conduct are "outside and beyond any contractual relationships" it maintains with Chrysler Financial. See Webster Memo at pp. 2-3. I find this argument to be without merit. The waivers in the contracts relied on by Chrysler Financial do govern here, as all of Webster's claims arise from or relate to the administration of the loans Webster applied for. Webster's statutory and common law claims in Civil Action 08-CV-6535 and its counterclaims in Civil Action 09-CV-6044 alleging that Chrysler Financial engaged in racially discriminatory and retaliatory conduct by unfairly accelerating Webster Chrysler Jeep's financial obligations all exist because of the contractual relationships between the parties and, as a result, must be governed by the waivers contained in those contracts. Jury trial waivers in a contract are to be construed broadly to encompass both contract claims and related tort claims where the "causes of action would not exist were it not for the relationship between [the

13

parties]," as well as "counterclaims whether or not arising from" the contract at issue.  See *In Re* Actrade Fin. Tech., No. 02 Civ. 16212, 2007 WL 1791687, at *1 (Bankr. S.D.N.Y. June 20, 2007)("Broad waivers have been construed to include tort claims as well as contract claims."). Here, because plaintiffs' claims arise out of and relate to the administration of the loan which the parties contracted for, it is altogether appropriate to apply the contractual jury waiver clause.  See Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 704-06 (S.D.N.Y. 2011)(holding that the jury waiver applied to both plaintiff's contractual claims and his discrimination claims); see also Brown v. Cushman & Wakefield, Inc., 235 F. Supp. 2d 291, 294 (S.D.N.Y. 2002)(remarking that "the waiver clause was extremely broad and included 'any matters whatsoever arising out of this Agreement'" and finding, as a result, that the jury waiver "should not be construed to refer only to breach of contract claims" but instead "applied to all of Plaintiff's employment claims including those arising under federal and state discrimination statutes"). The waivers here are sufficiently broad in their scope to encompass all of the claims asserted by Webster Chrysler Jeep and Randy Henderson as all claims and causes of action arise from their contractual relationship.

Voluntary Waivers: Having determined that the disputes at issue here are within the scope of the waivers, the Court next turns to whether Webster "knowingly and intentionally" waived its

14

right to a jury trial on its claims in Case No. 08-CV-6535 and its counterclaims in Case No. 09-CV-6044.

The evidence in the record before the Court is sufficient to prove that Webster did in fact "knowingly and intentionally" waive its right to a jury.  First, with respect to the negotiability of contract terms and negotiations between the parties concerning the waiver provision, there is no indication that the terms of the various agreements were not negotiable.  "Simply because [plaintiffs] did not negotiate these provisions, and because the form was created by [defendants], does not mean that the waiver or other terms in the application agreement were not negotiable."  Oei & M.J.F.M. Kools v. Citibank, N.A., 957 F. Supp. 492, 523 (S.D.N.Y. 1997)(remarking that the parties' agreement "was not like a ticket sold to a passenger boarding a cruise ship").  Indeed, there is evidence in the record Henderson did in fact negotiate certain terms of certain agreements and made modifications to certain agreements.  See, e.g., Exhibits "3A" and "3B" attached to Docket # 107.  Specifically, even before Henderson was represented by counsel, he successfully negotiated changes to provisions of the Certificate of Authority dated March 27, 2002.  See id.

Second, with respect to the conspicuousness of the waiver provisions in the contracts, there can be no reasonable dispute that the jury waivers here are all quite conspicuous.  They are set off in their own separate paragraphs, most are in all capital

15

letters and in bold print, and most are located immediately prior to the signature lines.  It is the opinion of the Court that the jury waivers at issue here would be nearly impossible not to notice.  They are not "buried" in the contracts or "set deeply and inconspicuously in the contract."  See National Equip. Rental, Ltd. v. Hendrix, 565 F.2d at 258; see also Bear Stearns Funding, Inc. v. Interface Grp.-Nev., Inc., No. 03 Civ. 8259(CSH), 2007 WL 3286645, at *1 (S.D.N.Y. Nov. 7, 2007)(enforcing the jury waiver where the waiver was "in capitalized boldface"); National Westminister Bank, U.S.A. v. Ross, 130 B.R. 656, 667 (S.D.N.Y. 1991)(finding a jury waiver conspicuous where it is "set off in its own paragraph less than two inches above the signature line"); cf. Luis Acosta, Inc. v. Citibank, N.A., 920 F. Supp. 15, 19 (D. P.R. 1996)(finding the waiver unenforceable where it was "not boldface and is buried at the end of the contract").

Third, with respect to the relative bargaining power of the parties, although there was undoubtedly a difference in bargaining power between the sides, there was not a gross inequality in bargaining power between the parties.  Henderson was not a financial novice and had an established relationship with Chrysler. See, e.g., Morgan Guar. Trust Co. of N.Y. v. Crane, 36 F. Supp. 2d at 604 (upholding a jury waiver provision even though there was a difference in bargaining power between the parties because the party opposing the waiver was not completely unfamiliar with either

the process involved, or the party with whom they were contracting, and therefore maintained the ability to negotiate effectively); Oei & M.J.F.M. Kools v. Citibank, N.A., 957 F. Supp. at  523 (noting that there was not a gross inequality in bargaining power where plaintiff was a "longtime customer" of defendant and defendant "had an interest in accommodating him").

Finally, with respect to the business acumen of Henderson, Henderson was an experienced businessman with years of experience in the automobile industry and with automobile finance, as well as experience with sophisticated business transactions.  The fact that Henderson is experienced in business supports the enforcement of the contractual waivers.  Substantial past business experience on behalf of the party contesting a jury waiver is an indication that the party knowingly and intentionally consented to the waiver.  See National Equip. Rental, Ltd. v. Hendrix, 565 F.2d at 258 (noting that it would be unfair to uphold jury waivers in situations where the parties who signed the contract are laymen, who cannot be expected to understand what exactly they were agreeing to); Morgan Guar. Trust Co. of N.Y. v. Crane, 36 F. Supp. 2d at 604 (listing the various qualifications of the parties who were denying the validity of the jury waiver, including their work tasks and previous business transactions, as evidence that they knowingly agreed to the provisions); Oei & M.J.F.M. Kools v. Citibank, N.A., 957 F. Supp. at  523 (denying plaintiff's jury demand because

17

plaintiff "was an experienced businessman" who had worked as a product manager for IBM for several years, and therefore he knowingly and intentionally waived his right to a jury when he signed the contract at issue); <u>National Westminister Bank, U.S.A. v. Ross</u>, 130 B.R. at 667 (listing defendant's education credentials, occupation, and past negotiating experience as evidence that he voluntarily and intentionally waived his right to a jury trial).

Based on the foregoing, the Court concludes that Webster and Henderson knowingly and intentionally waived their right to a jury trial. As a result, Chrysler Financial's motion to strike the jury demand (Docket # 107) is granted.

## Conclusion

Defendants' motion to strike the jury demand (Docket # 107) is **granted.**

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:  March 30, 2012
Rochester, New York